UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X

CEMENT AND CONCRETE WORKERS DISTRICT
COUNCIL WELFARE FUND, PENSION FUND,
ANNUITY FUND and EDUCATION AND TRAINING
FUND and SILVANA BALDO, in her fiduciary
capacity as Administrator of the Cement
and Concrete Workers District Council
Welfare Fund, Pension Fund and Annuity
Fund,

                    and

BARRY KAPLAN, as President of the CEMENT
AND CONCRETE WORKERS DISTRICT COUNCIL and
in his fiduciary capacity as a Trustee of
the EDUCATION AND TRAINING FUND,


                          Plaintiffs,      CV-04-0915 (CPS)


     - against -                           MEMORANDUM OPINION
                                           AND ORDER


ATLAS CONCRETE CONSTRUCTION CORP.,
Headline Products, LLC

                         Defendant.

----------------------------------------
ATLAS CONCRETE CONSTRUCTION CORP.,

                    Third Party Plaintiff,

               against

GENERAL BUILDING LABORERS' LOCAL UNION 66,

                    and

GENERAL BUILDING LABORERS' LOCAL 66 TRUST
FUND,

                    Third Party Defendants.

----------------------------------------X

SIFTON, Senior Judge.


Atlas Concrete Construction Corporation ("Atlas") brings
this third party action against Defendants General Building
Laborers' Local Union 66 ("Local 66 Union") and General Building
Laborers' Local 66 Trust Fund ("Local 66 Trust Fund" or the
"Fund") to recover employee benefit payments Atlas made to the
Local 66 Trust Fund.  Atlas made these payments for workers whose
primary benefit provider was the Local 66 Trust Fund, with
respect to work performed within a territorial jurisdiction of
another labor union and its funds.  Atlas contends that the Local
66 Trust Fund must either return these payments to Atlas or
transfer them to the trust funds of the other labor union, Cement
and Concrete Workers District Council Funds ("CCWDC Funds"), so
that Atlas may satisfy claims brought against it by the CCWDC
Funds, a group of employee benefit funds that cover Atlas
employees who work in the jurisdiction of the Cement and Concrete
Workers District Council ("CCWDC Union").[1]  Atlas asserts three

[1] This action arises out of an action commenced against Atlas on March 4,
2004 by Cement and Concrete Workers District Council Welfare Fund, Pension Fund,
Annuity Fund, Education and Training Fund (collectively referred to as "the Cement
and Concrete Workers District Council Funds" or "CCWDC Funds"), Silvana Baldo in
her capacity as Administrator of the CCWDC Funds, and Barry Kaplan, President of
the Cement and Concrete Workers District Council ("CCWDC Union") and Trustee of
the Education and Training Fund.  Plaintiffs CCWDC Funds et al. in the original
action allege that Atlas failed to submit required contributions to the CCWDC
Funds and failed to submit dues and amount checkoffs to the CCWDC Union.
Plaintiffs in the original action allege six claims against Atlas: (1)
breach of contract in failing to contribute the sum of $300,998.86 during the

claims for relief: (1) breach of contract by Local 66 Union and
Local 66 Trust Fund, (2) its right to an accounting against the
Local 66 Trust Fund of all sums paid to the fund by Atlas to
cover employees within the jurisdiction of the Cement and
Concrete Workers Funds, and (3) unjust enrichment against the
Local 66 Trust Fund.  Jurisdiction is alleged under the Employee
Retirement Security Act ("ERISA") §§ 502(a)(3) and 515[2], the
Labor Management Relations Act ("LMRA") § 301[3], 28 U.S.C. §

---

period January 1, 1999 through December 31, 2002, as required by collective
bargaining agreements between Atlas and the union, (2) an account stated against
Atlas regarding the balance due of $300,998.86, (3) breach of Section 515 of
ERISA, 29 U.S.C. § 1132, and damages under Section 502 of ERISA, 29 U.S.C. § 1145,
(4) an order for audit against Atlas, (5) breach of contract by failing to
transfer to the union deductions Atlas took in the amount of $38,101.55 as dues
and amount checkoffs, as required by the collective bargaining agreements, and (6)
an account stated against Atlas regarding the $38,101.55 dues and amount checkoffs
due to the union.
    In this third party action, Atlas asserts that because the employees' work
that Atlas intended to cover through its payments to the Local 66 Trust Fund was
within the jurisdiction of the CCWDC Union, the Local 66 Trust Fund should have
transferred those payments to the CCWDC Union.

    [2] ERISA § 502(a)(3) (or 29 U.S.C. § 1132(a)(3)) provides that a civil action
may be brought

        by a participant, beneficiary, or fiduciary (A) to enjoin any act or
        practice which violates any provision of this subchapter or the terms of
        the plan, or (B) to obtain other appropriate equitable relief (i) to
        redress such violations or (ii) to enforce any provisions of this
        subchapter or the terms of the plan.

    ERISA § 515 (or 29 U.S.C. § 1145) provides that

        [e]very employer who is obligated to make contributions to a multiemployer
        plan under the terms of the plan or under the terms of a collectively
        bargained agreement shall, to the extent not inconsistent with law, make
        such contributions in accordance with the terms and conditions of such plan
        or such agreement.

    [3] LMRA § 301 (or 29 U.S.C. § 185(a)) provides that

        [s]uits for violation of contracts between an employer and a labor
        organization representing employees in an industry affecting commerce as
        defined in this chapter, or between any such labor organizations, may be
        brought in any district court of the United States having jurisdiction of
        the parties, without respect to the amount in controversy or without regard
        to the citizenship of the parties.

1331[4], 28 U.S.C. § 1337[5], and supplemental jurisdiction.[6]

Presently before the Court is Third Party Defendant Local 66 Trust Fund's motion to dismiss Atlas's Third Party Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.[7] For the reasons that follow, the Third Party Defendant's motion is granted. Atlas is granted leave to amend its complaint within thirty days of the date of this memorandum opinion and order.

## BACKGROUND

The following facts are taken from the Third Party Complaint and the parties' submissions in connection with this motion. To the extent the motion is brought pursuant to Rule 12(b)(6), I accept all factual allegations in the complaint as true and draw

---

[4] 28 U.S.C. § 1331 provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the Unites States." 28 U.S.C. § 1331.

[5] 28 U.S.C. § 1337 provides that "district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce . . . ." 28 U.S.C. § 1337(a).

[6] Under 28 U.S.C. § 1367(a),

[e]xcept as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a).

[7] Because no relief has been sought from the Local 66 Union, the parties have agreed that the Local 66 Union need not respond to the Third Party Complaint.

all reasonable inferences in the plaintiff's favor. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (*citing Gregory v. Daly*, 243 F.3d 687, 691 (2d Cir. 2001)). Disputes are noted.

Plaintiff Atlas is a construction corporation doing business in the State of New York. Defendant Local 66 Trust Fund provides benefits to employees covered by the Fund. The Local 66 Trust Fund is administered in Melville, New York. Defendant Local 66 Union is a labor organization which maintains its offices at the same address as the Funds in Melville, New York. Nonparty CCWDC Union is a labor organization which maintains offices in Whitestone, New York. Nonparty CCWDC Funds is an employee benefit fund which provides benefits to employees covered by the CCWDC Funds and maintains offices in Whitestone, New York.

Employers in the building and construction industry contribute monies to employee benefit funds pursuant to collective bargaining agreements between the employers and labor unions. Pursuant to the CCWDC Union's Collective Bargaining Agreement ("CCWDC Union CBA") with Atlas, Atlas agreed to pay benefits and contributions to the CCWDC Funds for work performed for Atlas by Local 66 members within the CCWDC Union's territorial jurisdiction. Under a reciprocity agreement between the CCWDC Funds and the Local 66 Trust Fund, the CCWDC Funds transmitted a portion of Atlas's contributions to the Local 66

Trust Fund in order to ensure benefit coverage for employees who had worked in the CCWDC Union's jurisdiction temporarily, but whose "Home Fund," or primary benefit provider, was the Local 66 Trust Fund. The Local 66 Trust Fund is administered by the Local 66 Union.[8]

On December 31, 2003, the Local 66 Trust Fund and the CCWDC Funds terminated their reciprocity agreement. Thereafter, Atlas states that when Atlas made payments to the CCWDC Funds with respect to work by Local 66 workers within CCWDC's jurisdiction, the CCWDC Funds did not transmit these payments to the Local 66 Trust Fund, "thereby depriving Atlas's employees of the benefit to which they were entitled."[9] Thereafter, Atlas contributed solely to the Local 66 Trust Fund, for all its employees whether or not they worked within the jurisdiction of the Local 66 or

_____

[8] The reciprocity agreements were created to allow employees who performed work in multiple jurisdictions to obtain full benefit coverage from a single fund. The agreements note that "employees have been or from time to time may be employed by an employer who is obligated to contribute to one of the Signatory Funds and at another time may be employed by an employer who is obligated to contribute to the other Signatory Fund," and that "such employees may lose, or may not obtain, eligibility for benefits as a result of their coverages under the two Signatory Funds arising from their employment with different Contributing Employers." The Trustees of the Signatory Funds were thus "empowered to enter into reciprocal agreements, and [] determined that it is in the best interests of their respective plan participants and beneficiaries to provide full undiluted benefits for employees who would be eligible under a Signatory Fund if their hours of covered employment had not been divided between employers and contributions on their behalf had not been made to more than one Signatory Fund." Under the agreements, therefore, employer contributions would be transferred to the "Home Fund" of each employee in instances where certain employees were working temporarily in the jurisdiction of a union covered by a different fund.

[9] Atlas's Amended Answer and Third Party Complaint ¶ 53.

CCWDC Union.[10]       In March 2004, the CCWDC Funds commenced an
action against Atlas for unpaid contributions for Atlas employees
who had worked within the CCWDC Union's jurisdiction.  Atlas
thereafter on June 14, 2006 commenced a third party action
against the Local 66 Trust Fund, contending that the Local 66
Trust Fund's failure to transfer payments to the CCWDC Funds
violates the agreement between the Local 66 Union and the CCWDC
Union, an agreement of which Atlas claims to be a third party
beneficiary.

## DISCUSSION

The Third Party Defendant Local 66 Trust Fund moves to
dismiss for lack of subject matter jurisdiction pursuant to Rule
12(b)(1) of the Federal Rules of Civil Procedure and failure to
state a claim under Rule 12(b)(6).

*Rule 12(b)(1)*

I turn first to Third Party Defendant's first ground of
dismissal, lack of subject matter jurisdiction, "since dismissal
of an action for lack of subject matter jurisdiction will render
all other accompanying defenses and motions moot."  *Amalgamated
Cotton Garment & Allied Industries Retirement Fund v. Youngworld*

---

[10] The CCWDC Union notes that "the Local 66 total wage rate and total fringe
benefit and contribution rate is lower than the [CCWDC Union Collective Bargaining
Agreement] rates."

*Stores Group, Inc.*, No. 99-3852, 2001 WL 314650, at *2 (S.D.N.Y. Mar. 30, 2001). When considering a motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6), the jurisdictional question must come first because "a disposition of a Rule 12(b)(6) motion is a decision on the merits, and therefore, an exercise of jurisdiction." *Id* (quoting *Magee v. Nassau County Medical Center*, 27 F.Supp.2d 154, 158 (E.D.N.Y. Nov. 13, 1998) (internal quotations omitted).

A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists. *See Luckett v. Bure*, 290 F.3d 493, 497 (2d Cir. 2002); *Malik v. Meissner*, 82 F.3d 560, 562 (2d Cir. 1996). When a defendant moves to dismiss a cause of action pursuant to Rule 12(b)(1), "the movant is deemed to be challenging the factual basis for the court's subject matter jurisdiction." *Cedars-Sinai Medical Center v. Watkins*, 11 F.3d 1573, 1583 (Fed.Cir. 1993). For purposes of such a motion, "the allegations in the complaint are not controlling . . . and only uncontroverted factual allegations are accepted as true." *Id.* "All other facts underlying the controverted jurisdictional allegations are in dispute and are subject to fact-finding by the district court." *Id.*, at 1584. Both the movant and the pleader are permitted to use affidavits and other pleading materials to support and oppose such a motion. *Zappia Middle E. Constr. Co. v. Emirate of Abu*

*Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000).

(1) ERISA §§ 502(a)(3) and 515

ERISA § 502(a)(3) provides that a civil action may be brought by "a participant, beneficiary, or fiduciary" of an employee benefit plan. *See* 29 U.S.C. § 1132(a)(3). This provision does not grant standing to contributing employers to sue multi-employer benefit plans. *See, e.g., Tuvia Convalescent Center, Inc. v. Nat'l Union of Hospital and Health Care Employees*, 717 F.2d 726, 730 (2d Cir. 1983) (holding that employers have no standing to bring suit under 29 U.S.C. § 1132 (ERISA § 502)); *Pressroom Unions-Printers League Income Sec. Fund v. Cont'l Assurance Co.*, 700 F.2d 889, 892 (2d Cir. 1983) (same); *Amalgamated Cotton Garment & Allied Industries Retirement Fund v. Youngworld Stores Group, Inc.*, No. 99-3852, 2001 WL 314650, at *3 (S.D.N.Y. Mar. 30, 2001) (same). Accordingly, Atlas has no subject matter jurisdiction under ERISA § 502(a)(3).

Atlas also brings this action pursuant to ERISA § 515, which provides that

> every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or agreement.

29 U.S.C. § 1145. As explained by the Second Circuit, the stated purpose of this provision is to "permit trustees of plans to

recover delinquent contributions efficaciously, and without
regard to issues which might arise under labor-management
relations law." *Benson v. Brower's Moving & Storage, Inc.*, 907
F.2d 310, 314 (2d Cir. 1990). It does not provide relief to
employers seeking to recover contributions already made. *See id*
(stating that employer may not escape obligation to contribute to
employee benefit plan by raising defenses that call into question
the union's ability to enforce the contract). Accordingly, Atlas
cannot assert jurisdiction under ERISA § 515.

(2) LMRA § 301

Section 301 of the LMRA regulates relationships among
employees, their unions, and employers. *See Bannerjee v.
Papadakis*, 583 F.Supp. 757, 760 (E.D.N.Y. Mar. 22, 1984). The
statute extends only to suits brought against defendants who are
parties to the underlying collective bargaining agreement. *See,
e.g., Bannerjee v. Papadakis*, 583 F.Supp. at 760; *Duane Reade v.
Allied Trades Council*, No. 04-3542, 2005 WL 3038645, at *4
(S.D.N.Y. Oct. 7, 2005) (citing *Smith v. Hickey*, 482 F.Supp. 644,
647 (S.D.N.Y. Dec. 19, 1979)). The Local 66 Trust Fund is not
party to the allegedly breached collective bargaining agreement
between Atlas and the CCWDC Union. Therefore, the statute cannot
apply to the Local 66 Trust Fund. The Second Circuit has held
that a third party action against defendants who are employee

benefit funds is improper under section 301 of the LMRA. *Tuvia Convalescent Center, Inc. v. Nat'l Union of Hospital and Health Care Employees*, 717 F.2d 726, 731 (2d Cir. 1983) (barring third party action "since a judgment against the Funds would effectively be a judgment against the individual members of the union that the Funds benefit") (citing *Lewis v. Benedict Coal Corp.*, 361 U.S. 459, 470 (1960), which noted that section 301 expresses a congressional intent to protect the interests of welfare fund beneficiaries because 301 provides that a union should be the sole source of recovery for injuries it inflicts). Accordingly, the Local 66 Trust Fund is not a proper defendant under LMRA § 301.

(3) Federal Common Law

In its memorandum in opposition to the motion to dismiss, Atlas does not dispute the Local 66 Trust Fund's contention that there is no subject matter jurisdiction under ERISA §§ 503 and 515 and LMRA § 301. Instead, Atlas argues that it has a federal common law claim to recover its payments and that jurisdiction over such a claim exists under 28 U.S.C. § 1331.[11]

---

[11] On this point, the distinction between seeking dismissal under Rule 12(b)(1) or Rule 12(b)(6) of the Federal Rules of Civil Procedure is less than clear. The question of whether Atlas has stated a claim under federal common law implicates Rule 12(b)(6), but also bears on whether Atlas has brought a claim over which this Court may assert jurisdiction under 28 U.S.C. § 1331. Because Atlas has not alleged this claim in its complaint, considering the claim under Rule 12(b)(1) is more appropriate. If the Court lacks the statutory or constitutional power to adjudicate the case, dismissal for lack of subject matter jurisdiction under Rule 12(b)(1) provides the correct frame of reference. *Makarova v. U.S.*,

Courts have indeed recognized a limited exception to the bar against employers' making ERISA claims. Under 29 U.S.C. § 1103(c)(2)(A)(ii) of ERISA, employers that make contributions to multi-employer benefit plans by mistake of fact or law may have their payments returned "within 6 months after the plan administrator determines that the contribution was made by mistake." 29 U.S.C. § 1103(c)(2)(A)(ii). Based on this provision, courts have concluded that "a limited right to recover overpayment exists." *Ciminelli Construction Co., Inc. v. Buffalo Laborers Supplemental Unemployment Benefit Fund*, 976 F.2d 834 and 836 (2d Cir. 1992) (citing cases). A plan's refusal to return the payments may be challenged if the plan's refusal to return them is arbitrary and capricious and the balance of the equities strongly favors restitution. *See Ciminelli,* 976 F.2d 834 and 836 (2d Cir. 1992); *Dumac Forestry Services, Inc. v. International Brotherhood of Electrical Workers*, 814 F.2d 79, 82 (2d Cir. 1987). "In determining the balance of equities, particular concern must be given to the effect on the financial stability of the fund." *Ciminelli*, 976 F.2d at 835. In addition, "sleeping on one's rights is always a consideration." *Id.* at 836. This exception must be applied narrowly in light of the Supreme Court's 2002 observation that "we have . . . been especially reluctant to tamper with the enforcement scheme embodied in the

---

201 F.3d 110, 113 (2d Cir. 2000).

[ERISA] statute by extending remedies not specifically authorized by its text." *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 209 (2002); *see also Ciminelli*, 976 F.2d at 836 (noting that "Congress evidently believed that the risk of mistaken contributions should rest largely with the employer" and that "[i]t had good reason for that conviction" because funds "must depend upon the employers' calculations" and because "[f]unds will . . . find it difficult to set aside accurate reserves to cover future claims").

Atlas has sufficiently alleged that its payments to the Local 66 Trust Fund were mistakenly made. As stated in the Third Party Complaint, "[a]s a result of the change in allocation set forth above," specifically referring to the termination of the reciprocity agreements between CCWDC Funds and Local 66 Trust Fund, "Atlas began paying directly to the third party defendant Fund[] contributions for its employees who performed work within the jurisdiction of the [CCWDC] Funds."[12] Because the CCWDC would no longer transfer payments to the Local 66 Trust Fund, Atlas may have believed that its employees could only receive full benefit coverage under the Local 66 Trust Fund. In doing so, Atlas may have mistakenly interpreted its obligation under the CCWDC Union collective bargaining agreement to contribute to the CCWDC Funds for work performed within the jurisdiction of the

---

[12] Third Party Complaint ¶¶ 53-54.

CCWDC Union once the reciprocity agreements ceased to exist.

Atlas's claim under federal common law is deficient however, because it has not alleged that the plan's refusal to transfer the payments within six months of discovering the mistake was arbitrary or capricious. It has merely characterized Local 66 Trust Fund's unwillingness to transfer as a "failure, refusal or neglect." Moreover, it has not set out, even in brief terms, how the Fund's refusal was arbitrary or capricious, let alone given any reasons for the Fund's failure to pay. *See Ciminelli*, 976 F.2d at 836 (affirming dismissal on summary judgment partly because plaintiff "made no attempt in discovery to probe the reasons for the funds' failure to repay . . . or to develop an affirmative case demonstrating arbitrariness or capriciousness"), *see also Bricklayers and Allied Craftworkers Local 2 v. C.G. Yantch, Inc.*, 316 F.Supp.2d 130, 153 (N.D.N.Y. Dec. 3, 2003) (dismissing restitution claim partly because "no factually based allegations have been made that any refusal to repay the contributions was arbitrary and capricious"). Demonstrating arbitrariness or capriciousness on the part of the fund is especially important in light of the permissive language of 29 U.S.C. § 1103(c)(2)(A)(ii), *see Dumac Forestry Services, Inc. v. International Brotherhood of Electrical Workers*, 814 F.2d 79, 82 (2d Cir. 1987) (stating that "the statute neither commands nor precludes the payment of refunds; it merely *permits* the return of

contributions mistakenly made") (citing cases) (emphasis in
original), and because this Court's "review of the administrative
decisions of pension and benefit funds is 'limited.'" *Ciminelli*,
976 F.2d at 836.

Atlas's federal common law claim also falls short because
Atlas has not indicated how the balance of the equities favors
transferring the payments to it.  Most significantly, Atlas has
been aware of its mistaken payments for over two years, at least
since the CCWDC Funds brought their claim against Atlas in March
2004.  Courts give particular consideration to time elapsed in
suits brought against pension and benefit funds "because a fund
generally must rely upon its current calculation of total
assets." *Ciminelli*, 976 F.2d at 836.  Because of the discretion
afforded fund administrators by 29 U.S.C. § 1103(c)(2)(A)(ii) in
determining whether to refund overpayments, courts are reluctant
to second-guess the administrators' judgments.  *See Brown v.
Healthcare and Retirement Corp. of America*, 25 F.3d 90, 94 n.4
(2d Cir. 1994).[13]  Because Atlas has not explained its delay in
bringing this suit, and because Atlas has made no showing of the

---

[13] The *Brown* Court observed that

[t]he fund administrators are in the best position to determine whether the
equities of a particular case require a refund or setoff, as opposed to
courts making that determination under the rubric of a purported federal
common law right to restitution or setoff.  We therefore leave those
decisions to those vested in the first instance by ERISA with the authority
and responsibility to make them.

*Brown v. Healthcare and Retirement Corp. of America*, 25 F.3d 90, 94 n.4 (2d Cir.
1994).

effect of repayment on the stability of the fund, I cannot conclude that the balance of equities favors Atlas. *See Ciminelli*, 976 F.2d at 836-37 (denying claim for restitution partly because of lapse of time and plaintiff "made no showing of the effect of repayment on the funds as a whole or upon individual beneficiaries of the funds"); *Bricklayers,* 316 F.Supp.2d at 153 (denying restitution claim because of time lapse and noting that even where the equities are arguably split, "the risk of mistake should fall upon the employer"). Accordingly, I conclude that Atlas has not stated a claim under 29 U.S.C. § 1103(c)(2)(A)(ii) and cannot assert jurisdiction under 28 U.S.C. § 1331, ERISA, and the LMRA.[14]

Because Atlas has not established that this Court has jurisdiction over its claims, Third Party Defendant Local 66 Trust Fund's motion to dismiss is granted. Atlas is granted leave to amend its complaint within thirty days of this memorandum opinion and order.[15]

---

[14] Plaintiff also cannot assert jurisdiction pursuant to 28 U.S.C. § 1337 because it has not alleged a claim under any Act of Congress regulating commerce. In any event, plaintiff has not argued on this motion that jurisdiction exists under this statute.
Plaintiff has also not argued for supplemental jurisdiction. Therefore, I do not address that issue here.

[15] In its Opposition Memorandum, Atlas requests leave to amend its complaint "should the Court believe the pleading does not sufficiently raise the issue of a federal common law claim for a refund due to overpayment or mistake . . . ." Atlas's Opposition Memorandum, p. 7. Under Rule 15(a) of the Federal Rules of Civil Procedure, a party may amend its pleading by leave of court "and leave shall be freely given when justice so requires." Fed. R. Civ. Proc. 15(a). At this stage, whether Atlas can sufficiently state a claim under federal law remains unclear, and "[i]f a proposed amendment is not clearly futile, then denial of leave to amend is improper." Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, 6 Federal Practice and Procedure § 1487 (2d ed. 1990).

**Conclusion**

For the reasons set forth above, Third Party Defendant Local 66 Trust Fund's motion to dismiss the Third Party Complaint is granted.  Atlas is granted leave to amend the complaint within thirty days of the date of this memorandum opinion and order.

The Clerk is directed to furnish a copy of the within to the parties and to the Magistrate Judge.


SO ORDERED.


Dated:     Brooklyn, New York
           February 13, 2007

                    By:  /s/ Charles P. Sifton (electronically signed)
                         United States District Judge